# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES LIN,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br><br>TELARIA, INC., PAUL CAINE, DOUG KNOPPER, WARREN LEE, RACHEL LAM, JAMES ROSSMAN, ROBERT SCHECHTER, KEVIN THOMPSON, and MARK ZAGORSKI,<br><br><br>　　　　　Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff James Lin ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Telaria, Inc. ("Telaria" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Telaria and the Defendants.

## SUMMARY OF THE ACTION

1. This is an action brought by Plaintiff against Telaria and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of the Company to Rubicon Project, Inc. ("Yum!") (the "Proposed Transaction").

2. On December 19, 2019, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Parent. Pursuant to the terms of the Merger Agreement, each share of Telaria common stock will be converted into the right to receive 1.082 shares of Rubicon common stock (the "Merger Consideration"). Following completion of the merger, Rubicon shareholders are expected to own 52.9% of the combined company.

3. On February 13, 2020, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC on Form S-4/A (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Telaria and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Telaria shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District. In addition, the Company is headquartered in this district.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, the owner of Telaria shares.

9. Defendant Telaria is incorporated under the laws of Delaware and has its principal executive offices located at 222 Broadway, New York, New York 10038. The Company's common stock trades on the New York Stock Exchange under the symbol "TLRA."

10. Defendant Mark Zagorski ("Zagorski") has been the Company's Chief Executive Officer and a director at all times during the relevant time period.

11. Defendant Paul Caine ("Caine") is and has been a director and Executive Chairman of Telaria at all times during the relevant time period.

12. Defendant Doug Knopper ("Knopper") is and has been a director of Telaria at all times during the relevant time period.

13. Defendant Warren Lee ("Lee") is and has been a director of Telaria at all times during the relevant time period.

14. Defendant Rachel Lam ("Lam") is and has been a director of Telaria at all times during the relevant time period.

15. Defendant James Rossman ("Rossman") is and has been a director of Telaria at all times during the relevant time period.

16. Defendant Robert Schechter ("Schechter") is and has been a director of Telaria at all times during the relevant time period.

17. Defendant Kevin Thompson ("Thompson") is and has been a director of Telaria at all times during the relevant time period.

18. Defendants Zagorski, Caine, Knopper, Lee, Lam, Rossman, Schechter, and Thompson are collectively referred to herein as the "Individual Defendants."

19. The Individual Defendants, along with Defendant Telaria, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

20. Telaria, a Delaware corporation, provides a fully programmatic software platform for premium publishers to manage and monetize their video advertising. Telaria's platform is built specifically for digital video and to support the unique requirements of connected TV, referred to as CTV, mobile and over-the-top content. Telaria provides publishers with real-time analytics, data and decisioning tools to control their video advertising business and offers a

holistic monetization solution to optimize yield across a publisher's entire supply of digital video inventory.

## **The Company Announces the Proposed Transaction**

21. On December 19, 2019, the Company jointly issued a press release announcing the Proposed Transaction. The press release stated in part:

> LOS ANGELES & NEW YORK--(BUSINESS WIRE)--Rubicon Project (NYSE:RUBI), the global exchange for advertising, and Telaria (NYSE: TLRA), the complete software platform that optimizes yield for leading video publishers, announced today that they have entered into a definitive agreement to combine in a stock-for-stock merger. The transaction, which has been unanimously approved by the Boards of Directors of both companies, will create the world's largest independent sell-side advertising platform, poised to capture growth in CTV.
>
> Together, Rubicon Project and Telaria will enable thousands of publishers to connect with hundreds of buyers and brands, creating a global, independent alternative to closed players in the ecosystem. In addition, the combined company will be an essential omnichannel partner for buyers across formats, screens and geographies. Both companies bring premium publisher partnerships and unique technical capabilities: Telaria as a leader in CTV, and Rubicon Project as an expert in scaled programmatic operations.
>
> "The combination of Rubicon Project and Telaria will establish the world's largest, independent sell-side advertising platform with scale, capabilities and solutions unmatched by the competition," said Michael Barrett, President & CEO of Rubicon Project. "This transformative combination builds on our commitment to trust and transparency and accelerates our strategy to provide buyers and sellers with a single path to every format and channel including CTV. We could not be more excited about the future as two individually strong industry leaders with complementary assets and cultures come together to create a market leader that we believe will generate significant opportunities for our employees, customers, partners, and stockholders worldwide."
>
> "Our businesses are highly complementary, and when combined, are a powerful, strategic alternative to the walled gardens, which have been frustrating both buyers and sellers due to their lack of transparency, innovation bottlenecks, and conflicted business models," stated Telaria CEO, Mark Zagorski. "The two companies will provide more technology resources, a broader geographic footprint and deeper financial assets to attack the growing opportunity created by the shift from linear viewing to CTV to the benefit of our customers and in support of a thriving open internet. For our stockholders, we believe this merger

allows us to accelerate our growth, while providing additional resources to increase investment and continue to scale our industry-leading CTV technology. For our employees, this is an opportunity for development and to fully realize the potential of what we have built these past few years in a scaled, omnichannel platform."

**Strategic Rationale and Financial Benefits**

The World's Largest Independent Sell-Side Advertising Platform: The combination of Rubicon Project's programmatic scale and expertise with Telaria's leadership in CTV technology and premium partnerships, will create the world's largest independent sell-side advertising platform. The result will enable publishers to monetize across all auction types and formats including CTV, desktop display, video, audio, and mobile. Together, the combined company will offer publishers a transparent alternative that supports the open internet and provides more control over how they manage their businesses.

Positioned to Capture the Growing CTV Opportunity: CTV is the fastest-growing digital medium, and an increasing amount of CTV viewing is ad-supported. CTV offers advertisers the premium environment of television and the enhanced marketing capabilities of digital media. As with all digital media, CTV advertising is poised to be almost entirely programmatically transacted in the near future. Driven by Telaria's leading market position and technology expertise, the combination of the two companies will provide additional engineering and sales resources, a broader geographic footprint and deeper financial assets to seize the CTV opportunity -- to the benefit of our customers and in support of a thriving open internet.

An Essential Omnichannel Partner for Buyers: The combination of Rubicon Project and Telaria will create an essential omnichannel partner for buyers to reach their target audiences, across all formats and devices, anywhere in the world. The result will be an optimized supply path across CTV, desktop display, video, audio, and mobile, committed to exceptional client service, industry-leading transparency, robust support for identity solutions and brand-safe, fraud-free premium inventory.

Uniquely Positioned to Serve Global Publishers: Rubicon Project and Telaria have complementary domestic and international footprints with strengths across the Americas, EMEA and APAC. In North America, the combined company will have strong technology and operations based in Los Angeles, New York and Silicon Valley. Together, the global company will have offices in 11 countries with trusted relationships with the world's leading buyers and sellers.

Combining Similar Cultures: Combined, Rubicon Project and Telaria will have more than 600 employees and contractors in 19 cities. Both companies are proud of their strong, employee-centric, client-focused corporate cultures. Rubicon

Project and Telaria each recognize its employees are the most significant contributors to its success, and will work to preserve and enhance that commitment as a combined entity.

Stronger Combined Financial Profile: The combined company will have diversified revenue streams, substantial Adjusted EBITDA and a strong balance sheet with approximately $150 million in cash and no debt based on September 30, 2019 balances. The merger creates both revenue and cost synergies, with expected annual run rate cost synergies of approximately $15-20 million. Lastly, we expect that the combined company will have substantial operating leverage resulting in attractive Adjusted EBITDA margins.

**Transaction Details**

Under the terms of the merger agreement, each share of Telaria common stock issued and outstanding as of the effective time of the Merger will be converted into the right to receive 1.082 shares of Rubicon Project common stock (and, if applicable, cash in lieu of fractional shares) less any applicable withholding taxes.

Upon closing, Telaria stockholders are expected to own approximately 47.1% and Rubicon Project stockholders are expected to own approximately 52.9% of the fully diluted shares of the combined company.

**Governance and Leadership**

Upon closing, Michael Barrett will be named Chief Executive Officer of the combined company, Mark Zagorski will be named President & Chief Operating Officer and David Day will be the Chief Financial Officer. Telaria board member Paul Caine will be Chairperson of the Board of Directors of the combined company. The full board will consist of nine members; four existing directors from each company and Michael Barrett, CEO.

**Timing and Approvals**

The transaction, which is expected to close in the first half of 2020, is subject to the receipt of required regulatory approvals and other customary closing conditions and the approval of stockholders of both companies.

**Advisors**

LUMA Partners LLC and Needham & Company, LLC are serving as financial advisors to Rubicon Project, and Gibson, Dunn & Crutcher LLP is serving as its legal advisor. RBC Capital Markets, LLC is serving as financial advisor to Telaria, and Cooley LLP is serving as its legal advisor.

# FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

22. On February 13, 2020, the Company authorized the filing of the Proxy Statement with the SEC. The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

23. Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

## Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Company's Financial Projections

24. The Proxy Statement contains projections prepared by Company's management concerning the Proposed Transaction, but fails to provide material information concerning such.

25. The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

26. In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

27. Specifically, for each set of projections prepared, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Adjusted EBITDA (ii) Unlevered Free Cash Flow for both companies; and (iii) Unlevered Free Cash Flow for the Pro Forma company.

28. Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction. Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding RBC's Financial Opinion**

29. The Proxy Statement contains the financial analyses and opinion of RBC Capital Markets, LLC ("RBC") concerning the Proposed Transaction, but fails to provide material information concerning such.

30. With respect to RBC's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the basis for selecting the discount rate range from 10.0% to 12.5% for Telaria

---

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

and 12.50% to 15.0% for Rubicon Project; (ii) the range of illustrative terminal values for the companies; and (iii) the basis of selecting the range of perpetuity growth rates of 3.0% to 4.0%.

31. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

32. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

33. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

34. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to

section 78l of this title." 15 U.S.C. § 78n(a)(1).

35. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

36. Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

37. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

38. The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

39. The Defendants knew or were negligent in not knowing that the material

information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

40. The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

41. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

42. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act)**

43. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44. The Individual Defendants acted as controlling persons of Telaria within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Telaria, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

45. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

47. In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

48. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

50. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C. Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 13, 2020

Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ & MILLER LLP**
821 Franklin Avenue, Suite 209
Garden City, New York 11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*